IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 16-12 |
| | : | |
| ERIC KALB | : | |

MCHUGH, J.                                                                                                        JANUARY 13, 2017

## MEMORANDUM

In this case, Defendant Eric Kalb, who purports to have witnessed, but not participated in, vandalism to federal property, used a payphone to report anonymously that his friend was electrocuted while stripping copper from an electrical box. He then attempted to leave the area but was stopped by police, leading to a potentially incriminating statement under interrogation. I suppressed Kalb's statement as the fruit of an unlawful stop, and the Government now moves for reconsideration of my decision.

Although it does not entirely abandon its position that Kalb was appropriately stopped under the rule of *Terry v. Ohio*, 392 U.S. 1 (1968), the Government now mainly argues that Kalb was sought only as a potential witness, rendering the officers' conduct lawful under *Illinois v. Lidster*, 540 U.S. 419 (2004). The defense is correct that the Government's newly minted argument, which is conceptually inconsistent with the Government's initial justification for the stop, does not qualify as a basis for reconsideration under the prevailing standard for such motions. But even if I were to overlook the test for granting reconsideration, I would not vacate my earlier Order suppressing the evidence because *Lidster* has no applicability on the facts of this case. The Government's Motion will therefore be denied.

1

**I.     The Government Fails to Meet the Prevailing Standard for Reconsideration.**

A motion for reconsideration should be granted only where the party seeking it can show an intervening change in the controlling law, the availability of new evidence that was not previously available, a clear error of law, or the need to prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). This standard applies with equal force in criminal cases, *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010), even though the stakes there are generally higher.[1]

Preliminarily, the defense argues that the Motion should be rejected as untimely. I disagree. In a conference call with the Court on October 29, 2016, the Government made clear that it sought leave to review the transcript of the suppression hearing before proceeding, and the Court scheduled a status conference for November 29. At a minimum, it would be understandable if the Government interpreted the Court's actions as granting it a 30-day extension. The transcript became available on November 14, and the Government's Motion was filed on November 29, after providing notice to the Court that it would be slightly delayed because of a competing trial listing. Rigid enforcement of the Local Rule governing timeliness of motions for reconsideration would be inconsistent with the collegial manner in which counsel have dealt with each other, and dealt with the Court.

Timeliness aside, however, the Government cannot meet its burden on reconsideration. The Court of Appeals has made clear that motions for reconsideration "are granted for 'compelling reasons,' such as a change in the law which reveals that an earlier ruling was

---

[1] At the beginning of its Motion for Reconsideration, the Government appears concerned that the Court was critical of its pursuit of charges against Kalb. That is not the case. The language the Government cites from my earlier Memorandum was simply a shorthand attempt to summarize Kalb's background, to put into perspective why the Government found it appropriate to pursue criminal charges.

2

erroneous, not for addressing arguments that a party should have raised earlier." *Dupree*, 617 F.3d at 732. In particular, the Third Circuit has advised that motions for reconsideration are not a vehicle through which the Government can advance arguments "piece by piece." *Id.* at 723.

In pressing its *Terry* theory, the only new perspective offered by the Government is an argument that Kalb's use of the term "scrapping" when he made the anonymous phone call reporting the incident had special significance for law enforcement. Specifically, the Government suggests that such a term would only be used by someone experienced in criminal vandalism, providing the officers with a heightened reason to suspect Kalb of wrongdoing. This is an argument that could as well have been made earlier, and as such not a proper basis for reconsideration. Beyond that, it has little force, because the Government itself concedes, as it must, that not all scrapping is illegal. Tr. of Oral Arg. 141:11–142:22. Scrappers are a fact not just of urban life, but indeed anywhere there is curbside pick-up of trash and recycling. *See id.* at 22:14–24 (testimony of Officer Raymond Emrich). Their conduct is not illegal unless it amounts to vandalism. Consequently, mere familiarity with the term does not suggest criminality.

As to attenuation of the taint from the unlawful stop, the Government wholly failed to raise such an argument previously, and it is therefore waived.

As to the vehicle stop itself, having failed to prevail under *Terry*, the Government now advances an entirely new, alternative theory under *Lidster*. Significantly, as discussed more fully on the merits below, such a theory is far removed from what the Government initially argued. Failure to address *Lidster* can hardly be claimed "clear error" by the Court, when the Government initially failed to advance *Lidster* as a justification for the officers' actions. Finally, even if *Lidster* might arguably apply, suppression of Kalb's statement on the record here hardly rises to the level of "manifest injustice."

For all of these reasons, reconsideration is properly denied. I will, nonetheless, address the Government's new theory.

### II. *Lidster* Cannot Be Extended to an Individualized Stop for the Purpose of Determining Whether a Motorist Might Be a Witness.

*Illinois v. Lidster*, 540 U.S. 419 (2004), arose out of a police investigation into a fatal hit-and-run accident on a highway. Lacking any leads, approximately one week after the accident the police established a checkpoint near the scene. At the checkpoint, police stopped each vehicle for approximately 10 to 15 seconds so that motorists could be asked if they had seen anything and be given a flyer requesting assistance. After a motorist approached the checkpoint while intoxicated and was then apprehended when he attempted to backtrack, he challenged the checkpoint as unlawful under the Fourth Amendment. The Supreme Court concluded that these brief "information-seeking" stops were not unreasonable because the public interest in solving the crime outweighed the brief and limited detention of motorists.

*Lidster* sanctioned the use of a generalized investigative technique that was applied equally to every member of the public, without any exercise of discretion by police. I am not persuaded that those same principles can be invoked to justify an individualized stop of a particular motorist for the purpose of determining whether he might be a witness. The *Lidster* Court took pains to emphasize the circumstances under which motorists were stopped:

> [T]he context here (seeking information from the public) is one in which, by definition, the concept of individualized suspicion has little role to play. Like certain other forms of police activity, say, crowd control or public safety, an information-seeking stop is not the kind of event that involves suspicion, or lack of suspicion, of the relevant individual.

4

*Id.* at 424–25.  In sharp contrast, the stop in this case was based entirely upon individualized suspicion, meaning the Government effectively seeks to use *Lidster* to expand its power to make individualized stops even when it cannot meet the requirements of *Terry*.[2]

Reading further into *Lidster*, it is clear that the public nature of checkpoint stops was important to the Court's result:

> [I]nformation-seeking highway stops are less likely to provoke anxiety or to prove intrusive.  The stops are likely brief.  The police are not likely to ask questions designed to elicit self-incriminating information.  And citizens will often react positively when police simply ask for their help as "responsible citizen[s]" to "give whatever information they may have to aid in law enforcement."

*Id.* at 425 (second alteration in original) (quoting *Miranda v. Arizona*, 384 U.S. 436, 477–78 (1966)).  Here, however, a fair reading of the situation is that the police sought Kalb precisely because of a suspicion that he was involved.  That makes *Lidster*, which *minimized* the risk of self-incrimination at checkpoint stops, an ironic precedent for the Government to invoke in a case where the only evidence of guilt is the fruit of the purportedly innocuous vehicle stop.

In evaluating the reasonableness of the checkpoint in *Lidster*, the Court further observed that "[v]iewed subjectively, the contact provided little reason for anxiety or alarm.  The police stopped all vehicles systemically."  *Id.* at 428.  But again, here Kalb was singled out—he had pulled over to the curb, and attempted to drive away as Officer Ferguson approached.

Brevity was likewise an important element in *Lidster*, whereas here Sergeant Tims candidly acknowledged that Kalb "wasn't going to go home.  He wasn't free to leave at this

---

[2] I hasten to reiterate that the position the Government advances at this stage is fundamentally inconsistent with its position at the suppression hearing.  Then, it contended that Kalb was stopped because of a reasonable articulable suspicion.  Now, it contends that he was stopped for the benign purpose of gathering information.  I am not inclined to adopt the maxim "any port in a storm" as a basis for resolving Fourth Amendment issues, and it is precisely this type of reversal of course that the standard governing reconsideration is meant to address.

point from our stop.  We were detaining him for Upper Merion."  Tr. of Oral Arg. 80:22–81:2.  Indeed, that concession seriously undermines the foundation of the Government's *Lidster* theory.

For its part, the Third Circuit has addressed *Lidster* in the context of airport screenings.  *See United States v. Hartwell*, 436 F.3d 174 (3d Cir. 2006) (upholding seizure of crack cocaine found on the defendant's person during airport screening).[3]  For purposes of this case, I find the following observation from (then) Judge Alito noteworthy:  "[T]he possibility for abuse is minimized by the public nature of the search.  'Unlike searches conducted on dark and lonely streets at night where often the officer and subject are the only witnesses, these searches are made under supervision and not far from the scrutiny of the traveling public.'"  *Id.* at 180 (citation omitted).  This comports with my reading of *Lidster*—that it is intended to apply in situations where citizens uniformly are asked to supply information in a public setting pursuant to a generalized application of police power.

The Government focuses on *Lidster*'s observation that the "Fourth Amendment does not treat a motorist's car as his castle," 540 U.S. at 424, and the proposition that police have the right to approach witnesses and seek their assistance.  Once again, this ignores the context that was so important to the *Lidster* Court's decision.  There, no motorist was singled out; the coercive power of police to control traffic was applied uniformly.  And there is an important distinction in this case between random pedestrians approached by police and Kalb here.  As Justice White observed in his concurrence in *Terry*:  "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets," but "[a]bsent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way."  392 U.S. at 34.  Here, Kalb was pulled over by the flashing lights of a

---

[3] *See also George v. Rehiel*, 738 F.3d 562 (3d Cir. 2013) (denying recovery in civil rights suit by a plaintiff who objected to airport screening).

6

police cruiser.  *See* 75 Pa. Cons. Stat. § 3733 (criminal penalties for failing to stop for police "when given a visual and audible signal to bring the vehicle to a stop").  The Third Circuit has also made clear that in an auto stop case, the threshold issue is whether the "seizure" of the driver was lawful.  *United States v. Mosley*, 454 F.3d 249, 253 (3d Cir. 2006).  For that reason, the Government's references to Officer Ferguson observing scrap metal in the truck and learning that Kalb's license was suspended are legally irrelevant, because that information followed from the stop.

      The Government's artfully worded statement that *Lidster* "is not confined to checkpoints" sheds little light on the issue here, because the decisions it cites focus on the authority to detain those whom the police already *know* to be witnesses from firsthand knowledge, not the power to stop a person in the first instance to determine *if* in fact they are a witness.  *See Maxwell v. County of San Diego*, 708 F.3d 1075 (9th Cir. 2013) (civil rights case against officers who delayed departure of ambulance on the ground that shooting victim was a witness); *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006) (civil rights case against officers who detained witnesses to shooting that occurred while officers were on-scene); *Golla v. City of Bossier City*, 687 F. Supp. 2d 645 (W.D. La. 2009) (civil rights case against officers who detained a husband and wife who had witnessed officer shoot their family member).  The final case cited by the Government, *Littler v. Bay Area Rapid Transit District (BART)*, No. 14-5072, 2016 WL 1734095 (N.D. Cal. Apr. 29, 2016), has no applicability, as the plaintiff there challenged only the length of her detention.

      As set forth in my earlier Memorandum, using the information Kalb supplied, police had already responded to the scene of the electrocution before he was stopped, such that there was no longer any ongoing emergency.  And nothing Kalb said over the phone implicated him in

any crime. A core value of the Fourth Amendment is that a citizen cannot be seized without probable cause. *Terry* extended that power where there is a "reasonable, articulable suspicion" of ongoing criminal conduct. The Government now argues that such power should be expanded still further to authorize seizure for the purpose of determining whether someone *might* be a witness. In my view, such a sweeping view of police power does not comport with the Constitution. As the Supreme Court expressed a similar reservation more than a century ago, albeit in a different context: "It would be against the policy of the law to allow such deviations and irregularities to creep in." *Omaha Hotel Co. v. Kountze*, 107 U.S. 378, 395 (1883).


       /s/ Gerald Austin McHugh
United States District Judge